# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

__________ Division

FILED OCT 9 2026 BT

| | |
|---|---|
| Kimberly Nicole Williams<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br><br>-v-<br><br>Caterpillar Inc.<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 1:26 CV 1192<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☑ Yes ☐ No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Kimberly Nicole Williams |
| Street Address | 405 S Elm Street |
| City and County | Maxton Robeson County |
| State and Zip Code | North Carolina 28364 |
| Telephone Number | 9106351667 |
| E-mail Address | wilki23206@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Caterpillar Inc. c/o CT Corporation System, |
| Job or Title *(if known)* | Legal Department/ or Registered Agent |
| Street Address | 160 Mine Lake Ct, Suite 200 |
| City and County | Raleigh Wake County |
| State and Zip Code | North Carolina 27615 |
| Telephone Number | (919) 845-9066 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Caterpillar Inc. |
| Street Address | 5000 Womack Road |
| City and County | Sanford Lee County |
| State and Zip Code | North Carolina 27330 |
| Telephone Number | (919) 777-2000 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

42 U.S.C. § 2000gg (PWFA); 42 U.S.C. § 1981; and 29 U.S.C. § 201 (FLSA)

☑ Relevant state law *(specify, if known)*:

N.C. Wage &Hour Act, and N.C. Common Law Torts

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [x] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*: suspension;hostile work environment;harassment;stalking; torts

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

;1/2025;04/22/25;10/2025;11/26/25;12/23/25;3/2026;4/2026;5/12/26;5/13/26 and 06/04/2026

C. I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

See attached pgs.

- [x] race
- [x] color
- [x] gender/sex
- [ ] religion
- [ ] national origin
- [x] age *(year of birth)* 1984 *(only when asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*

falsely accused of being crazy "mental instability"

E. The facts of my case are as follows. Attach additional pages if needed.

See attached pages, See -> "D." and typed complaint.

## Statement of Claim

Continuation page from Form Pro Se7 (page 4 of 6)

**A.** The discriminatory conduct of which I complain in this action includes:

- **Termination of my employment:** The Defendant terminated my employment based on a fabricated paper trail of false accusations to cover up age discrimination and retaliation.

- **Failure to promote me:** The Defendant discriminatorily blocked me from career advancement opportunities and promotions despite my qualifications.

- **Unequal terms and conditions of my employment:** The Defendant subjected me to disparate treatment, stricter scrutiny, and unequal workplace standards compared to younger, non-complaining employees. The Defendant completely deviated from and violated its own established internal HR and disciplinary policies regarding investigations and promotions, using inconsistent application of company policy as a pretextual tool to intentionally target, suspend, and terminate me.

- **Retaliation:** The Defendant targeted me with severe disciplinary actions, suspension, and termination immediately after I submitted a formal written complaint regarding wage and time theft. The Plaintiff engaged in legally protected activity by submitting a formal written complaint regarding a supervisor who was actively stealing the Plaintiff's wages and committing time theft. Shortly after this protected complaint was submitted, the Defendant's HR department and management failed to investigate the wage theft and instead began a campaign of intense **retaliation** to force the Plaintiff out.

- **Other acts (Suspension, Hostile Work Environment, Harassment, Stalking, and Torts):** The Defendant subjected me to an unwarranted suspension, a pervasive hostile work environment, unauthorized photograph surveillance (stalking) at work and my days off from work, and intentional defamatory torts that destroyed my professional reputation.

Kenny W. Willis, Pro Se
10/09/2026

Continuation page from Form Pro Se7 (page 4 of 6)

D. Defendants discriminated against me based on my:

**Age Discrimination**: The Defendant discriminated against me based on my **age (42)** and illegally retaliated against me. I submitted a formal written complaint regarding my supervisor stealing my wages and committing time theft. Shortly after submitting this protected written complaint, 2 months later the Defendant's HR department and management actively sought to terminate my employment. My supervisor targeted me by spreading false, derogatory rumors, blocking me from being promoted, and engaging in targeted harassment—including taking unauthorized photographs of me and instructing other employees to do the same so the origin of the photo taking would be hard to determine. When HR terminated me, they deliberately manufactured severe, defamatory, and entirely false accusations of identity theft, fraud, insubordinate, and combative behavior. The Defendant fabricated these charges to create a false paper trial, insulate themselves from legal liability, and wrongfully shift the blame onto me to cover up their age discrimination and unlawful retaliation. The Defendant's severe and false accusations of criminal misconduct directly threaten my professional reputation as an older worker. These fabricated charges create a devastating barrier to my career, intentionally impeding my ability to secure new employment and earn a living whenever potential employers conduct standard reference and background checks.

[signature], Pro Se
10/09/2026

Continuation page from Form Pro Se7 (page 4 of 6)

D. Defendants discriminated against me based on my:

- **Race/Color:** The Defendant discriminated against me based on my race as an African American. Colorism/ skin color by subjecting me to a hostile work environment. Team interactions across different skin toned individuals were not equal treatment for everyone specifically dark skin females. Wrongful suspension and wrongfully terminating my employment, denying me advancement opportunities while treating similarly situated employees outside of my protected class more favorably.

---

- **Gender/Sex:** The Defendant discriminated against me based on my sex/gender as a female when they wrongfully suspended me wrongfully terminated me, and denied me advancement opportunities Defendant denied me promotional opportunities for a position traditionally held or preferred for male employees, explicitly demonstrating that the promotion was denied because of my status as a female. During my employment, Defendant subjected me to disparate treatment and a hostile work environment based on my sex and race. On or about **May 12-13, 2026, 3rd shift**, Defendant issued a **wrongful suspension** against me. While performing my regular duties in my assigned work bay, Defendant falsely accused me of workplace misconduct. The accusation was entirely baseless and fabricated to create a false record of disciplinary issues. This suspension was motivated by discriminatory animus against me as a female employee. At all relevant times, I kept to myself and focused strictly on my work performance. Similarly situated male employees routinely engaged in the exact same workplace behavior and conduct, yet they were never monitored, questioned, or accused of misconduct. Defendant selectively enforced unwritten or non-existent workplace policies against me. When I requested documentation or clarification regarding the specific rules I supposedly violated, Defendant failed and refused to provide any proof that the alleged policies actually existed.

  Defendant's reliance on fabricated, undocumented rules to penalize me—while failing to apply any such standards to male or non-African American employees—demonstrates that the allegations were entirely pretextual. Because I am a female employee this false accusation of misconduct was a discriminatory tactic used by Defendant to justify my subsequent wrongful suspension and termination, and to mask their underlying gender animus in violation of **Title VII of the Civil Rights Act of 1964**

Defendant's decision to terminate me was based on my race and intersectional status as an African American female. Defendant utilized false or pretextual performance reasons to justify the termination. Defendants maintained a clear double standard in its enforcement of workplace expectations. While I was falsely accused of misconduct, suspended, and terminated, similarly situated non-African American employees were routinely permitted to retain their positions under identical circumstances.

Furthermore, non-African American employees were frequently praised and even promoted for keeping to themselves and refusing to engage in workplace drama. Defendant treated this exact behavior as a professional asset for non-African American and male employees, while weaponizing it against me as a pretext for discipline. This disparate treatment demonstrates that Defendant's adverse actions were motivated by unlawful race and sex discrimination in violation of **Title VII of the Civil Rights Act of 1964**.

---

- **Perceived Disability:** Furthermore, during my employment and leading up to my suspension and termination, Defendant's management and employees subjected me to a hostile work environment by weaponizing false, highly offensive accusations regarding my mental health. Defendant maliciously and falsely characterized my standard demeanor—such as keeping to myself in my assigned work bay—as evidence of being 'crazy' or suffering from 'mental instability.'

- Defendant used these fabricated labels regarding a **perceived mental disability** to target me for discipline and to undermine my professional standing. Non-African American and male employees who kept to themselves were regarded as focused professionals, while I was retaliated against and subjected to selective policy enforcement under the pretext that I was mentally unstable. This defamatory labeling and subsequent adverse action constitute intentional discrimination based on a perceived disability in direct violation of the **Americans with Disabilities Act (ADA) 42 U.S.C. § 12101 et seq. (Specifically Title I of the ADA, 42 U.S.C. § 12112)**

---

- **Pregnancy Discrimination:** In 2025, Defendant further discriminated against me based on my gender and sex by denying me opportunities for advancement and career development. This denial was rooted entirely in pregnancy discrimination. Specifically, management personnel began acting on an unverified assumption that I was pregnant before I had ever formally disclosed or discussed my pregnancy status with the company.

Plaintiff learned of this discriminatory focus when management bypassed standard professional boundaries and began actively soliciting information from other staff members, explicitly questioning my coworkers regarding whether I was pregnant.

No manager routinely or randomly interrogates employees about the medical or pregnancy status of a colleague unless motivated by discriminatory scrutiny. Driven by this assumption of pregnancy, Defendant subjected me to extreme, non-standard surveillance. Based on the unprecedented level of inside information management held regarding my movements, Defendant utilized tracking mechanisms—specifically tracking my movements via my employee badge and a GPS tracking device associated with my vehicle. This invasive surveillance and unauthorized monitoring were uniquely weaponized against me as a pregnant, African American female to restrict my advancement, fabricate false disciplinary pretexts, and ultimately engineer my wrongful suspension and termination in violation of **Title VII** and the **Pregnancy Discrimination Act of 1978 (PDA) 42 U.S.C. § 2000e(k)**

---

- Moreover, management or unauthorized personnel took pictures of me inside the facility while I was sitting down during natural operational lulls—such as when the production line stopped moving for the next line index or immediately after I had completed my assigned work.

  Although I was completely caught up on my duties and maintained standard performance, Defendant weaponized these photographs to fabricate a false narrative of idle misconduct. Similarly situated male, non-pregnant, and non-African American employees routinely sat down or rested during identical operational lulls when the line stopped or when their work was finished; however, they were never subjected to invasive photography, heightened surveillance, or disciplinary actions. This selective enforcement and surveillance demonstrate that the photographs were used purely as a pretextual tool to justify my wrongful suspension and termination based on my race, color, gender, and pregnancy, in violation of **Title VII**.

Kimy H. Willis, Pro Se
10/09/2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

**Kimberly Nicole Williams, Plaintiff**
v.
**Caterpillar Inc., Defendant**

**ATTACHMENT TO SECTION III: STATEMENT OF CLAIM**

1. Plaintiff incorporates allegations previously set forth in the standard Pro Se 7 form and submits this attachment to detail further retaliatory actions taken by the Defendant.

2. On October 7, 2026, Plaintiff discovered that the Defendant has engaged in post-employment retaliation by manipulating tax reporting and/or lodging false accusations of identity theft and fraud against the Plaintiff to federal authorities -I.R.S..

3. As a direct result of the Defendant's retaliatory actions and false reports, the Internal Revenue Service (IRS) has placed an active "financial hold" on the Plaintiff's account, completely freezing, and delaying the Plaintiff's income tax refund.

4. As of the date of this filing, the Plaintiff's tax refund has been unlawfully withheld for approximately six (6) months due to this hold. Plaintiff filed taxes on March 8,2026

5. Plaintiff alleges that the Defendant weaponized the federal tax system and made these false accusations in bad faith, specifically to cause the Plaintiff severe financial hardship in retaliation for the Plaintiff filing an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC).

6. Plaintiff called to check the status of her refund and was to receive her tax refund after waiting for the 6-month time frame in October 2026 and it was still on hold. Referral sent.

7. Because this retaliatory conduct was discovered on October 5, 2026—after the issuance of the EEOC Notice of Right to Sue—it could not be included in the original administrative charge. However, this retaliation is directly related to, and arose out of, the original protected activity.

**DECLARATION UNDER PENALTY OF PERJURY**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: 10/09/2026

Kimberly N. Williams, Pro Se

Kimberly N. Williams, Plaintiff Pro Se

SEE ATTACHED SHEET FOR COMPLETE FACTUAL ALLEGATIONS AND LEGAL COUNTS.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

09-29-2026

B. The Equal Employment Opportunity Commission *(check one)*:

- ☐ has not issued a Notice of Right to Sue letter.
- ☑ issued a Notice of Right to Sue letter, which I received on *(date)* 09/29/2026 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

- ☐ 60 days or more have elapsed.
- ☑ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached continuation sheet titled 'Attachment to Section V: Relief' incorporated herein by reference.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/09/2026

Signature of Plaintiff: Kimberly Nicole Williams, Pro Se

Printed Name of Plaintiff: Kimberly Nicole Williams

### B. For Attorneys

Date of signing: ____________

Signature of Attorney ____________

Printed Name of Attorney ____________

Bar Number ____________

Name of Law Firm ____________

Street Address ____________

State and Zip Code ____________

Telephone Number ____________

E-mail Address ____________

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREENSBORO DIVISION

Case No.: ___________________

KIMBERLY N. WILLIAMS,)

Plaintiff, Pro Se,)

v.)

CATERPILLAR INC., )

Defendant. )

**COMPLAINT AND JURY DEMAND**

**NOW COMES** the Plaintiff, Kimberly N. Williams, proceeding pro se (representing herself), and respectfully files this Complaint against Defendant Caterpillar Inc., alleging severe discrimination, retaliation, wage theft, and extensive tortious misconduct, stating as follows:

**I. JURISDICTION AND VENUE-**

1. Federal Question Jurisdiction: This Court has original subject-matter jurisdiction over Plaintiff's federal law claims pursuant to **28 U.S.C. § 1331**, as this action arises under Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000**e et seq.; the Civil Rights Act of 1866, **42 U.S.C. § 1981**; the Pregnant Workers Fairness Act (PWFA), **42 U.S.C. § 2000gg** et seq.; the Age Discrimination in Employment Act (ADEA**), 29 U.S.C. § 621** et seq.; the Americans with Disabilities Act (ADA), **42 U.S.C. § 12101** et seq.; and the Fair Labor Standards Act (FLSA), **29 U.S.C. § 201** et seq.

2. Supplemental Jurisdiction: This Court has supplemental jurisdiction over Plaintiff's state-law tort and wage claims pursuant to **28 U.S.C. § 1367(a)**, because they form part of

the same operational case or controversy and arise from a common nucleus of operative facts.

**3. Administrative Exhaustion**: Plaintiff has exhausted all administrative remedies prior to filing this action. On September 29, 2026, Plaintiff participated in an initial intake interview with the Equal Employment Opportunity Commission (EEOC). On that identical date, September 29, 2026, the EEOC immediately closed the file and issued a Notice of Right to Sue without conducting a formal field investigation.

**4.** Due to an administrative or technical error by the agency, the EEOC portal reflects an incorrect, unsigned draft document rather than the accurate Charge of Discrimination Plaintiff electronically executed. Because the EEOC fast-tracked the administrative process and issued the operative Right to Sue letter attached hereto **as Exhibit A, Plaintiff** has timely filed this Complaint within the mandatory ninety (90) days of receipt to preserve her federal rights.

**5. Venue**: Venue is proper in the Greensboro Division under **28 U.S.C. § 1391(b)** because Defendant operates and does continuous business within this district, and the unlawful employment practices, security breaches, and torts occurred at Defendant's **Sanford, North Carolina manufacturing facility** within this judicial district.

---

## II. PARTIES

**6.** Plaintiff, Kimberly N. Williams, is an adult citizen and resident of Maxton, North Carolina, located in Robeson County. At all times relevant, Plaintiff was over the age of forty (40) years old, an African-American female, and a qualified individual under federal employment protections. Plaintiff possesses a professional background and credentials as a certified HR Generalist who worked on the manufacturing floor as a production assembler.

**7.** Defendant Caterpillar Inc. is a foreign corporation doing continuous business at its manufacturing facility in Sanford, North Carolina, where it employs more than fifty (50) individuals, and was the employer of Plaintiff.

## III. FACTUAL ALLEGATIONS

**8.** Plaintiff began working for Defendant on or about February 27,2023 as a Production Assembler until her pretextual termination on June 4, 2026.

**9.** Discriminatory Failure to Promote: In January 2025, while actively employed by Defendant, Plaintiff applied for an internal Facility Management position. At the time of application, Plaintiff was visibly pregnant, showing a clear baby bump, and was an otherwise highly qualified candidate with extensive experience working on the production floor within the manufacturing facility of Caterpillar and possessed credentials as a certified Lean Six Sigma Black Belt and other qualifying credentials..

**10. Destruction of Digital Qualifications**: In March 2025, rather than evaluating Plaintiff on her professional merits, Defendant's management maliciously accessed the internal corporate Workday software system and completely removed, wiped, or altered Plaintiff's professional qualifications history to fit their false narrative of being under qualified or not qualified at all for promotions. This electronic erasure was executed intentionally to block her professional advancement, disqualify her from high-paying corporate roles, and discriminate against her based on her protected class status (race, color, gender, and pregnancy).

**11.** In good faith, Plaintiff observed and formally reported severe workplace safety, operational defects, and security violations to management, Caterpillar Security, and Human Resources. Such as heat level rising within the facility, and other safety and security concerns.

**12.** Following these reports, Plaintiff was subjected to a malicious, escalating campaign of retaliation, colorism, and severe discrimination regarding her race (Black, African-American), gender, and age. Plaintiff was specifically targeted by a section manager due to having a darker complexion than said manager.

**13.** Section management falsely documented to HR that Plaintiff was "lazy and all she does is sit down," and spread highly offensive, graphic remarks to other staff members, stating "she suck d***," "she is crazy," accused Plaintiff of following her in the facility on April 16,2026", "look how she dresses she not going to be a manager," and generated humiliating rumors asking staff if Plaintiff was pregnant.

**14.** Without Plaintiff's knowledge or consent, agents of the Defendant criminally broke into and searched Plaintiff's personal vehicle parked on company property, stealing her private banking and financial documents and committing financial farad. Management also instructed female staff members to illegally break into and search through Plaintiff's personal bag when Plaintiff left the manufacturing floor to go to the bathroom.

**15. Electronic Tracking and Surveillance Abuse:** Without Plaintiff's knowledge, consent, or prior disclosure, Defendant weaponized facility operations by covertly placing an active GPS tracking mechanism on Plaintiff's employee badge. Furthermore, Defendant's agents

engaged in non-consensual surveillance by secretly taking photographs of Plaintiff inside the facility which goes against Caterpillar company policy . Defendant utilized this high-tech stalking network, alongside information stolen from her vehicle, to execute systemic, unauthorized consumer credit and background screenings through third parties the Plaintiff's financial institutions she banks with Educational Federal Credit Union, and including Liberty Mutual—using stolen financial data. These actions were taken maliciously to monitor Plaintiff's movements, breach her confidentiality, destroy her physical and data safety, and single her out for disparate treatment to block her promotion into higher-paying roles she applied for internally due to her race, age and gender by retaliation.

**16.** Furthermore, Defendant's management actively breached confidentiality by exposing her private info to third parties and forged Plaintiff's signature on two separate employee handbooks to cover up their unlawful acts of the illegal search of her vehicle. Potentially forged Plaintiff name to other documents unknown to the Plaintiff that can cause harm.

**17.** Plaintiff was routinely denied her scheduled lunch breaks outside. When Plaintiff opposed these conditions, Defendant bypassed standard corporate protocol—which dictates placing an employee on neutral Paid Administrative Leave during an internal investigation—and instead subjected her to an immediate, punitive, unpaid suspension on May 13, 2026.

**18. The Immediate Human Resources/Management Ambush**: On May 13, 2026, Defendant's management ambushed Plaintiff at the facility entrance/ exit immediately as she was returning from her scheduled break. The Human Resources manager falsely claimed that Plaintiff went to coworkers to disrupt the floor after he informed her she was being suspended. In reality, because management completely failed to notify Plaintiff's team of her sudden removal (suspension), Plaintiff briefly went to gather her personal belongings and responsibly informed two coworkers—including the Bay Area Team Lead—of her forced absence so they could arrange immediate operational coverage for her timed manufacturing bay. Plaintiff's professional actions and exact words during this brief transition were captured on a contemporaneous voice recording, proving she acted to protect the facility's workflow when management refused to do so.

**19. Fabrication Regarding Refusal to Leave Premises**: Defendant falsely asserted that Plaintiff "refused to leave" the premises and acted as a trespasser, prompting them to call law enforcement. This is an egregious fabrication. Company policy explicitly dictates that employees must clock out before leaving. Plaintiff requested to clock out, but Defendant actively blocked her from doing so. Knowing that leaving without clocking out could be twisted into "job abandonment," Plaintiff requested written paperwork confirming she was being suspended. Defendant refused.

**20.** When Plaintiff asked HR Representative John Allen for the written reason for the suspension, he gave conflicting verbal excuses and ultimately handed Plaintiff a Level 3 write-up for "unsatisfactory performance." This document completely contradicted the claim of any misconduct, as the text merely referenced Plaintiff taking her scheduled breaks outside and using her personal chair and fan at her workstation. **Responding law enforcement arrived and actively assisted Plaintiff in compelling Human Resources to allow Plaintiff to safely clock out per company policy.**

**21**. Defendant kept Plaintiff on this wrongful, unpaid suspension for twenty-two (22) days without ever providing a written suspension notice, a written statement of allegations, in direct violation of basic corporate due process.

**22**. On June 4, 2026, Defendant's Human Resources Manager Elaine Yow officially terminated Plaintiff via email based on these entirely pretextual, fabricated, and malicious claims of misconduct. Defendant intentionally withheld eighty-four **(84) hours** of Plaintiff's earned, accrued PTO.

**23. Malicious Administrative Interference:** Following the ambush from the HR Generalist Mr. Allen, the HR Manager Elaine Yow and Director of HR Vance Kirkpatrick authorized the suspension to proceed with no foundational documentation in place, automatically assuming Plaintiff's guilt before an investigation was conducted and placing her on disciplinary leave. Plaintiff was forced to contact HR via email later that day on 05/13/2026 to discover the basic terms and reasons for her suspension. Defendant kept Plaintiff on this wrongful, unpaid suspension for twenty-two (22) days without basic corporate due process, culminating in her termination on June 4, 2026.

**24**. Following termination, Defendant manufactured fraudulent written claims accusing Plaintiff of "misconduct", "identity theft," "fraud," "insubordination," and being "combative", and "unsatisfactory performance". Plaintiff never received a poor performance annaul evaluation management chose to only recognize her on the expected level to again block future advancement. Publishing these fabrications to the North Carolina Division of Employment Security (DES) to maliciously block her statutory unemployment benefits.

*Employees' performance are evaluated at levels: **Superior Performance** ( only 5 employee might get to this level), **Exceeded Performance, Expected Performance,** and **Did Not Meet Performance.**

**Malicious Interference with Unemployment Benefits:** Following her constructive and retaliatory separation, Defendant intentionally interfered with Plaintiff's state unemployment benefits. Defendant's representatives submitted false, malicious statements to the DES unemployment office, lying that Plaintiff was "combative" with staff,

management, and law enforcement, and claiming she was terminated for misconduct on the job. At a 2nd administrative hearing resulting in a DES Board of Review decision on **September 16, 2026**. ( Plaintiff Appealed this decision)

**25.** At an administrative unemployment hearing on July 30,2026 and August 25,2026 Defendant's HR representative admitted under oath that the company submitted zero documented evidence or proof to substantiate any of these allegations to NC Division of Employment Security.

**26.Administrative Hearing Due Process Violations:** At the administrative appeals hearing, the Appeals Referee improperly intervened, coached the witness to decline testifying, and completely barred Plaintiff from cross-examining or questioning the other corporate witnesses present on the record, restricting inquiry strictly to John Allen or the referee himself, and blocking cross-examination of Human Resources Manager Elaine Yow.

**27**. The severe, targeted, and continuous harassment inflicted by Defendant caused Plaintiff profound emotional, mental, and physical distress, which tragically intertwined with and exacerbated the circumstances surrounding her post-partum symptoms. Non-Black employees, male employees, and substantially younger employees were never subjected to these immediate management ambushes, bad-faith police intervention, unauthorized credit checks, tracking software, forged documents, or systemic defamation.

---

## IV. LEGAL CAUSES OF ACTION

### COUNT I: RETALIATION & EMPLOYMENT DISCRIMINATION

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the PWFA)**

(Race, Color/Colorism, Gender, Age, and Pregnancy Discrimination)

**28**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**29**. Four Key Elements: (1) Plaintiff belongs to multiple protected classes (including being a Black female over 40 who was visibly pregnant and perceived by management as mentally unstable or "crazy" under the ADA) and engaged in protected activity by reporting discrimination and safety defects; (2) Defendant had full knowledge of her protected status and activities; (3) Defendant took severe adverse employment actions including wiping her qualifications from the Workday system, denying promotions, withholding/restricting lunch breaks outside or actual break from work area, putting an tracking wire/chip on her badge, and terminating her; and (4) A causal connection links her protected status and protected disclosures directly to these adverse actions.

**30**. Defendant maliciously harassed, subjected to a pervasively hostile work environment, and terminated Plaintiff as a direct retaliation for her good-faith complaints, utilizing fabricated claims of insubordination and forged handbook entries as an illegal pretextual cover-up. Because Plaintiff brings racial discrimination and colorism claims under **42 U.S.C. § 1981**, Defendant is subject to unlimited punitive and compensatory damages, bypassing standard statutory caps.

---

**COUNT II: INTENTIONAL TORT**

(Invasion of Privacy, Stalking, & Conversion)

**31**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**32.** Four Key Elements: (1) An intentional, highly offensive unauthorized act committed by the defendant; (2) An explicit intrusion into Plaintiff's private domain, physical sanctuary, and personal data (vehicle break-in, physical badge modification, hidden tracking software, and non-consensual photography); (3) A complete lack of consent; and (4) Proximate severe harm and psychological/financial damages.

**33.** Defendant intentionally and outrageously invaded Plaintiff's privacy by breaking into her locked personal vehicle on facility grounds, converting her private financial property, modifying her employee badge with tracking software to stalk her movements without disclosure, installing a hidden tracking device on her vehicle, and taking unauthorized photographs to build a fraudulent profile to shield its discriminatory practices.

---

**COUNT III: NEGLIGENT TORT**

(Negligent Retention and Supervision)

**34**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**35.** Four Key Elements: (1) An employee of the defendant committed a tortious act against the plaintiff; (2) The employee was incompetent or unfit for their role; (3) The employer had actual or constructive knowledge of this unfitness prior to the tortious act; and (4) The employer's negligence in retaining and supervising the employee proximately caused Plaintiff's injuries.

**36.** Defendant knew or should have known its management and staff were actively stalking, tracking via GPS software, breaking into vehicles as there are parking lot cameras throughout the exterior of the facility, engaging in illegal vehicle searches, conducting

illegal non-consensual credit inquiries, forging handbook signature pages, and slandering Plaintiff, yet failed to take corrective action, supervise, or restrain them.

---

**COUNT IV: STRICT LIABILITY TORT**

(Ultrahazardous / Dangerous Conditions)

**37**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**38.** Four Key Elements: (1) Defendant maintained a condition or activity that poses an inherent, severe risk of harm to others; (2) The risk cannot be eliminated even with the exercise of reasonable care; (3) Defendant chose to operate under these hazardous terms; and (4) Plaintiff suffered actual injury resulting directly from this condition.

**39.** Defendant maintained strict control over a highly industrial, timed manufacturing facility and weaponized corporate operations, covert location surveillance monitoring, and physical exit barriers to systematically violate Plaintiff's physical safety, blocking her from clocking out and forcing a bad-faith police confrontation. Due to Defendant refusal of supporting documents for Plaintiff suspension.

---

**COUNT V: ECONOMIC TORT & WRONGFUL INTERFERENCE**

**40**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**41**. Four Key Elements: (1) A valid economic relationship or business expectancy existed between Plaintiff and an entity (Unemployment benefits and future internal/external job positions); (2) Defendant had explicit knowledge of this relationship or internal job applications; (3) Defendant intentionally and unjustifiably interfered with that relationship using fraud, forgery, or malicious non-consensual background rescreening; and (4) Plaintiff suffered actual financial loss and severe economic injury.

**42**. Defendant intentionally used forged records, stolen banking information, and deceptive, unauthorized background checks through third-party platforms to wrongfully interfere with Plaintiff's advancement into higher-paying corporate roles and to destroy her statutory right to post-employment benefits without her knowledge and consent.

---

**COUNT VI: NORTH CAROLINA CONSTITUTIONAL TORT**

**43.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**44**. Four Key Elements: (1) A state-enforced or legally protected liberty or property right exists; (2) An egregious violation of that right occurred within North Carolina; (3) The absence of an alternative, adequate state administrative remedy to address the specific scope of the harm; and (4) Resulting legal damages.

**45.** Defendant conspired to deny Plaintiff her basic liberties, physical autonomy, and property rights on company ground by blocking her escape, placing undisclosed tracking markers on her person, and denying access to standard corporate due process without adequate immediate state recourse.

---

**COUNT VII: WAGE THEFT**

(North Carolina Wage and Hour Act & The Fair Labor Standards Act - FLSA)

**46**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**47. Four Key Elements**: (1) An employer-employee relationship existed under both state and federal law; (2) Specific compensation (84 hours of accrued PTO and earned break pay) was earned and accrued by the employee; (3) The employer withheld payments past the statutory deadline; and (4) The failure to pay lacked any good-faith legal justification.

**48**. Defendant willfully, maliciously, and without good-faith justification violated the FLSA and North Carolina law by forcing Plaintiff to stay inside during scheduled breaks, denying outdoor rest/time away from work area, and completely withholding her eighty-four (84) hours of earned, accrued PTO and mandatory break compensation following her termination.

---

**COUNT VIII: TORT BY DEFAMATION PER SE**

**49**. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**50. Four Key Elements**: (1) Defendant made false, defamatory statements concerning the Plaintiff; (2) The statements were published to third parties (including coworkers and state administrative agencies) without privilege; (3) The statements constituted defamation per se by falsely accusing Plaintiff of infamous crimes (fraud and identity theft) or exposing her to extreme professional and sexual ridicule ("she suck d***" and "she crazy"); and (4) The statements caused immediate legal injury and damage to reputation.

**51.** Defendant published outright, documentable fabrications to the state agency and across the facility floor to maliciously destroy Plaintiff's reputation, professional standing, and character.

---

## V. REMEDIES FOR DEFAMATION SUITS

**52**. Plaintiff explicitly demands the following remedies specifically tailored to redress Defendant's intentional defamation per se:

- **Presumed General Damages**: Compensatory damages for severe injury to reputation, mental suffering, and public humiliation, which are legally presumed by law without requiring proof of direct economic loss due to the egregious nature of Defamation Per Se.

- **Special Economic Damages**: Compensation for all documentable financial opportunities, job opportunities, and unemployment payouts lost as a direct consequence of Defendant's published lies.

- **Punitive Damages**: Exemplary damages pursuant to **N.C. Gen. Stat. § 1D-15** to punish Defendant's actual malice, bad faith, and reckless disregard for the truth.

- **Injunctive Expungement**: A permanent court order forcing Defendant to completely retract all defamatory entries in Plaintiff personnel file and send an official correction notice to the NC Division of Employment Security. Plaintiff receives a notarized copy of all retracted documents with exact number of all retractions.

---

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor against Defendant Caterpillar Inc., awarding the following relief:

1. A Declaratory Judgment stating that Defendant's suspension and termination of Plaintiff constituted unlawful discrimination and retaliation in violation of the law;

2. Back Pay and all lost compensation, including bonuses, health insurance contributions, and retirement benefits, from the date of the adverse action to the date of judgment, plus pre-judgment interest;

3. Front Pay inclusive of the projected costs of **vocational rehabilitation and educational retraining** necessary to mitigate damages and transition to an alternative career, due to the fact that Defendant's retaliatory and discriminatory actions have rendered reinstatement unfeasible and severely impaired Plaintiff's earning capacity in their chosen field.

4. An equal amount of (double) Liquidated Damages as provided by applicable federal statute, due to the willful nature of Defendant's unlawful employment practices; Payout of the 84 hours of earned PTO under **N.C. Gen. Stat. § 95-25.22**;

5. Treble Damages pursuant to N.C. Gen. Stat. § 95-243(c) for Defendant's willful violation of North Carolina's public policy and anti-retaliation laws

6. Compensatory Damages for emotional distress, humiliation, and loss of enjoyment of life, invasion of privacy, and illegal electronic tracking/surveillance;
7. caused by Defendant's unlawful conduct

8. Title VII Punitive Damages up to the federal maximum cap of $300,000 to punish Defendant's malicious and reckless indifference to Plaintiff's legally protected rights pursuant to **N.C. Gen. Stat. § 1D-15**; and

9. North Carolina Punitive damages for egregious intentional torts and malicious defamation per se pursuant to **N.C. Gen. Stat. § 1D-15;**

**10. Injunctive and Equitable Relief:**

- **Permanent Injunction:** A permanent court injunction prohibiting Defendant, its corporate directors, officers, and agents, from engaging in any further acts of workplace retaliation, post work retaliation, stalking, harassment, or character defamation against Plaintiff;

- **Personnel File Expungement:** An order directing Defendant to completely purge, delete, and expunge any and all fabricated "performance" write-ups, manufactured performance metrics, manufactured performance write-ups, false disciplinary entries, and fraudulent allegations of "insubordination," "misconduct," "fraud," "identity theft," or being "combative" from Plaintiff's corporate personnel record;

- **Mandatory Notarized Verification on Company Letter Head:** An order requiring Defendant to provide Plaintiff with an exact, complete copy of her fully expunged personnel file, accompanied by a formal, notarized corporate affidavit executed under penalty of perjury verifying that all defamatory entries have been permanently removed from all corporate databases;

- **Strict Neutral-Employment Reference Mandate:** A permanent order restricting Defendant's Human Resources department and agents to a strict "Neutral Reference Only" policy regarding any future third-party or employment inquiries. Defendants shall be legally restricted to confirming *only* Plaintiff's exact dates of employment and her job duration, with an absolute prohibition on disclosing any fabricated disciplinary data or separation reasons; and

- **Agency Correction Notice:** An permanent order forcing Defendant to issue an official written retraction and correction notice to the North Carolina Division of Employment Security to permanently clear Plaintiff's record of all bad-faith allegations including but not limited to misconduct allegations. Plaintiff receives a notarized copy of all retracted documents with exact number of all retractions

**11. All Other Relief:** Any such additional, alternative, or further relief—including statutory costs—as this Court deems just, equitable, and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

Dated: October 9, 2026

Respectfully submitted,

Plaintiff Pro Se , Kimberly N. Williams,

405 S Elm Street

Maxton, NC 28364

910-635-1667

Email: wilki23206@gmail.com

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __9TH__ day of _October 2026.

Pro Se , **Kimberly N. Williams**